**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| SHAWN D. HANSLEY, | |
| Appellant | No. 1019 MDA 2015 |

Appeal from the Order Entered June 4, 2015
in the Court of Common Pleas of Lancaster County
Criminal Division at No.: CP-36-CR-0003030-2011

BEFORE: PANELLA, J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED JANUARY 21, 2016**

Appellant, Shawn D. Hansley, appeals from the order denying his counseled first petition for relief pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546, after a hearing. Appellant claims that his trial counsel was ineffective and that his guilty plea was a product of this ineffective assistance of counsel. We affirm on the basis of the PCRA court opinion.

In its opinion, the court fully and correctly sets forth the relevant facts and procedural history of this case. (**See** PCRA Court Opinion, 6/04/15, at 2-7). Therefore, we have no reason to restate them at length here.

_____

[*] Retired Senior Judge assigned to the Superior Court.

For context and convenience of reference, we note briefly that on November 8, 2012, Appellant pleaded guilty, pursuant to a negotiated plea agreement, to aggravated assault[1] and simple assault,[2] and was sentenced to an agreed-on aggregate sentence of not less than two nor more than six years of incarceration. In exchange for his guilty plea, the Commonwealth *nolle prossed* the count of aggravated assault with a deadly weapon enhancement.[3] Appellant's conviction arose out of a workplace altercation between Appellant and the victims, Mark and Tim Miranda, wherein Appellant "used a box cutter to cut the left eye and eyebrow and left nose of Tim Miranda." (N.T. Guilty Plea and Sentencing Hearing, 11/08/2012, at 8). Appellant also cut the left eye and left side of the mouth of Mark Miranda. (**See id.** at 9).

The trial court denied Appellant's post-sentence motion and granted trial counsel's request to withdraw on November 29, 2012. On December 19, 2012, petitioner *pro se* filed a timely first PCRA petition. After the PCRA court appointed counsel to represent Appellant, he submitted an amended motion for post-conviction collateral relief. The PCRA court held a hearing

---

[1] 18 Pa.C.S.A. § 2702(a)(1).

[2] 18 Pa.C.S.A. § 2701(a)(2).

[3] 18 Pa.C.S.A. § 2702(a)(4).

on December 15, 2014, during which Appellant sought relief on four grounds:

> (1) [Trial counsel] failed to provide [Appellant] with any written discovery materials before [Appellant's] guilty plea despite [Appellant's] request to review them; (2) [trial counsel] met [Appellant] only four times between [Appellant's] request and guilty plea; (3) [trial counsel] refused to interview any potential witnesses in a timely manner; and (4) [trial counsel] told [Appellant] that a Lancaster County jury would not acquit [Appellant] because of [Appellant's] race, notwithstanding the potential merits of any defense. ([*See*] Pet. Am. Mot. For Post-Conviction Collateral Relief ¶ 9(A)-(D)).

(PCRA Ct. Op., at 8). During the PCRA hearing, the court heard testimony from Appellant's trial counsel, one of his co-workers, and Appellant. The court found counsel's testimony credible and Appellant's not credible. (*See id.* at 7). After the hearing, the PCRA court denied Appellant's amended petition. (*See* PCRA Ct. Op. and Order, 6/04/15). This timely appeal followed.[4]

Appellant raises one question on appeal:

> [I.] Whether the [PCRA] court erred in denying [Appellant's] amended motion for post-conviction collateral relief when his guilty plea was a product of the ineffective assistance of counsel?

(Appellant's Brief, at 4) (most capitalization omitted).

> Our standard of review of the denial of a PCRA petition is limited to examining whether the court's determination

---

[4] The PCRA court filed an order on June 12, 2015, referencing its opinion filed June 4, 2015. (*See* Order, 6/12/15); *see also* Pa.R.A.P. 1925(a). The court did not order a statement of errors. *See* Pa.R.A.P. 1925(b).

is supported by the evidence of record and free of legal error. This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. Further, the PCRA court's credibility determinations are binding on this Court, where there is record support for those determinations.

*Commonwealth v. Anderson*, 995 A.2d 1184, 1189 (Pa. Super. 2010)[, *appeal denied*, 9 A.3d 626 (Pa. 2010)] (citations omitted).

> To prevail on a claim alleging counsel's ineffectiveness under the PCRA, Appellant must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's course of conduct was without a reasonable basis designed to effectuate [her] client's interest; and (3) that he was prejudiced by counsel's ineffectiveness, *i.e.* there is a reasonable probability that but for the act or omission in question the outcome of the proceedings would have been different.
>
> It is clear that a criminal defendant's right to effective counsel extends to the plea process, as well as during trial. However, [a]llegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.

*Commonwealth v. Wah*, 42 A.3d 335, 338 (Pa. Super. 2012) (citations, quotation, and quotation marks omitted). "[T]he law does not require that [the defendant] be pleased with the outcome of his decision to enter a plea of guilty: All that is required is that [his] decision to plead guilty be knowingly, voluntarily, and intelligently made." *Anderson*, [*supra*] at 1192 (citations, quotation, and quotation marks omitted). Moreover, with regard to the prejudice prong, where an appellant has entered a guilty plea, the appellant must demonstrate "it is reasonably probable that, but for counsel's errors, he would not have pleaded guilty and would have gone to trial." *Commonwealth v. Rathfon*, 899 A.2d 365, 370 (Pa. Super. 2006) (quotation and quotation marks omitted).

*Commonwealth v. Timchak*, 69 A.3d 765, 769-70 (Pa. Super. 2013).

Here, after a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the PCRA court we conclude that there is no merit to the issue Appellant has raised on appeal. The PCRA court opinion properly disposes of the question presented. (**See** PCRA Ct. Op., at 7-25) (concluding that: (1) trial counsel met with Appellant on numerous occasions, maintained written communication with him, and had investigators meet with him, and Appellant suffered no prejudice based on the number of meetings; (2) trial counsel had reasonable basis for not obtaining video of altercation or giving Appellant copy of discovery packet and Appellant suffered no prejudice based on not having copy of packet; (3) trial counsel's lack of effort to contact witness did not constitute ineffective assistance because witness's testimony would have been useless to any defense and absence of her testimony did not prejudice Appellant; (4) trial counsel had reasonable basis for not asserting self-defense or "castle doctrine" defense; and (5) Appellant entered knowing, voluntary, and intelligent guilty plea as demonstrated by extensive on-the-record colloquy). Accordingly, we affirm on the basis of the PCRA court's opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/21/2016</u>

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH OF PENNSYLVANIA :
           :
      vs.       :    No. 3030-2011
           :
SHAWN D. HANSLEY     :

**O P I N I O N**

BY: WRIGHT, J.           June ___, 2015

   Before the Court are Petitioner Shawn D. Hansley's *pro se* "Motion for Post

Conviction Collateral Relier [sic]," "Motion for Ineffective Counseln [sic]" deemed a

"Petition for Post-Conviction Collateral Relief" by this Court's January 7, 2013 Order,

Petitioner's "Amended Motion for Post-Conviction Collateral Relief" accompanied by a

Brief in Support, as well as the Commonwealth's Reply Brief. Petitioner claims that the

following aspects of his guilty plea counsel's assistance were ineffective such that he

should be entitled to relief under the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A.

§§ 9541-46[1]: (1) Petitioner's guilty plea counsel failed to provide Petitioner with any

written discovery materials before Petitioner's guilty plea despite Petitioner's request to

review them; (2) Petitioner's guilty plea counsel met Petitioner only four times between

Petitioner's arrest and guilty plea; (3) Petitioner's guilty plea counsel refused to interview

any potential witnesses in a timely manner; and (4) Petitioner's guilty plea counsel told

---

[1] At the PCRA hearing, I asked Petitioner's attorney to specify the exact grounds for relief. (N.T. PCRA Hr'g. at 3:8-9.) Attorney Quinn limited the grounds for relief to those provided in Paragraph 9 (A)-(D) of Petitioner's Amended Motion for Post-Conviction Collateral Relief. (Id. at 3:14-17.)
To the extent that paragraphs 8 and 10-12 of Petitioner's Amended Motion for Post-Conviction Relief state alternate grounds for relief, those grounds are waived due to Attorney Quinn's limiting statement at the PCRA hearing.

Petitioner that a Lancaster County jury would not acquit Petitioner because of Petitioner's race, notwithstanding the potential merits of any defense. As a result of this allegedly ineffective assistance, Petitioner claims that his guilty plea was not knowing, intelligent, and voluntary.[2] For the reasons that follow, Defendant's PCRA Petition is denied.

## BACKGROUND

On Criminal Information 3030-2011, Petitioner was charged with one count of Aggravated Assault (F-1),[3] another count of Aggravated Assault (F-2),[4] and Simple Assault (M-2).[5] The charges stem from a June 24, 2011 workplace altercation that occurred at approximately 10:15 A.M. at the Newgistics building located at 3750 Hempland Road, West Hempfield Township. (Aff. Prob. Cause, ¶ 1; N.T. PCRA Hr'g. at 34:1-2.)[6] The altercation was preceded by a "verbal argument" about a damaged motorcycle that escalated into a physical confrontation. (See Aff. Prob. Cause ¶ 1.) It directly involved Petitioner and two of his co-workers, brothers Tim and Mark Miranda. (N.T. Guilty Plea & Sentencing Hr'g. at 2:23-3:2.) During the altercation, Petitioner used a box cutter to slash the left eye, left eyebrow, and left side of Tim Miranda's nose as well as Mark Miranda's forehead above the left eye and the left side of his mouth. (Aff. Prob. Cause ¶ 1; Compl. 2.) Petitioner admitted slashing the Miranda brothers with the

---

[2] Def's Am.Mot. For Post-Conviction Relief, ¶¶ 8-12.
[3] 18 Pa. C.S.A. § 2702(a)(1)
[4] 18 Pa. C.S.A. § 2702(a)(4)
[5] 18 Pa. C.S.A. § 2701(a)(2)
[6] N.T. PCRA Hr'g. at 34:1-2. The reference to Defendant's working at Logistics was either a misstatement by Attorney Spotts or a typo. (N.T. Guilty Plea & Sentencing at 13:8.)

2

box cutter during the fight. (See Aff. Prob. Cause ¶ 3.) Between his arrest and Guilty Plea/Sentencing hearing, Petitioner submitted two *pro se* filings.[7]

## Guilty Plea & Sentencing

A Guilty-Plea/Sentencing hearing was held on November 8, 2012. Patricia K. Spotts, Esquire, of the Lancaster County Office of the Public Defender represented Petitioner. (N.T. Guilty Plea & Sentencing Hr'g. at 1.) A guilty plea was negotiated between the Commonwealth and Petitioner in which Count 1-Aggravated Assault (F-1) would be *nolle prossed* with costs on Petitioner, but Petitioner would plead guilty to Count 2-Aggravated Assault (F-2) and Count 3-Simple Assault (M-2) for agreed-upon concurrent sentences of 2-6 years of incarceration in a State Correctional Institution plus a $300 fine on the Aggravated Assault Count, and time served to twenty-three months on the Simple Assault Count. (See Id. at 21:3-6 (establishing concurrent sentences); Plea Agreement).) Petitioner would have to pay all costs, including a mandatory $250 DNA sampling fee and the sum of $5701.00 in restitution. (See Plea Agreement.) Defendant was also made Boot Camp eligible.[8] (See N.T. Guilty Plea & Sentencing Hr'g. at 21:10-12.)

---

[7] The first was titled "Informal Request for Transcripts," requested "[a]ny information that would be helpful in my [d]efense," and was filed on November 21, 2011. The Filing is dated November 21, 2011. It was time-stamped by the Clerk of Courts on November 23, 2011. Although this discrepancy does not affect any disposition in these proceedings, this Request will be deemed to have been filed on November 21, 2011, pursuant to the "prisoner mailbox rule." See Commonwealth v. Crawford, 17 A.3d 1279, 1281 (Pa. Super. Ct. 2011) ("Under the prisoner mailbox rule, we deem a *pro se* document filed on the date it is placed in the hands of prison authorities for mailing."); see also Commonwealth v. Little, 716 A.2d 1287, 1289 (Pa. Super. Ct. 1998) ("We therefore hold that the prisoner mailbox rule is applicable to petitions filed pursuant to the PCRA . . . ."). Petitioner then submitted a *pro se* "MOTION FOR RELEASE ON NOMINAL BAIL" on April 6, 2012. I deem this Motion to have been filed on April 6, 2012, pursuant to the "prisoner mailbox rule" because the envelope was postmarked with that date. All subsequent references in this Opinion to dates of *pro se* filings will reflect the prisoner mailbox rule where applicable.
[8] Attorney Spotts stated that the deadly weapon enhancement associated with the Aggravated Assault charge would normally preclude Defendant from being Boot Camp eligible. (N.T. Guilty Plea & Sentencing Hr'g. at 20:1-4.)

At the November 8, 2012 hearing, I accepted a seven-page written guilty plea colloquy, a guilty plea slip, a written Plea Agreement, and a sentencing guidelines sheet. (Id. at 5:3-18.) I also conducted an on-the-record colloquy.[9] After some initial explanation of Petitioner's rights, I asked him if he "still wish[ed] to plead guilty." (Id. at 7:21-22) He responded "I guess I have to. I just want to get it behind me." (Id. at 7:22-23.) At this point in the hearing, I expressly reminded Petitioner that he did not have to plead guilty, that he had a right to a trial, and explained that I had to make sure that Petitioner was making a "knowing, voluntary, [and] intelligent decision to plead guilty." (Id. at 7:25-8:10.) I again asked Petitioner if he understood the rights I had explained to him and if he still wanted to plead guilty. (Id. at 8:8-14.) Petitioner answered "Yes" to both questions. (Id. at 8:11, 15.)

After Assistant District Attorney Todd Brown stated the factual basis for the charges, Petitioner admitted using a box cutter to slash the faces of Tim and Mark Miranda, but claimed he did so to defend himself. (Id. at 8:16-18.) I then asked Petitioner if he admitted using the box cutter to slash the Miranda Brothers, which he did, reminded him of his absolute right to a jury trial if he so chose, and continued the colloquy, emphasizing his trial rights. (Id. at 9:19-11:10.) During the colloquy, Petitioner stated that his plea was fully voluntary and that he was satisfied with the services of Attorney Spotts. (Id. at 11:12-12:6.)

---

[9] See N.T. Guilty Plea & Sentencing Hr'g. at 5:3-18; Guilty Plea Colloquy (indicating that Petitioner signed written guilty plea colloquy, understood all questions in the guilty plea colloquy, ensured the accuracy of all handwritten answers before signing the written guilty plea colloquy, and understood the meaning and legal effect of signing the written guilty plea colloquy); id. at 5:19-6:3; Guilty Plea Slip (indicating that Petitioner signed guilty plea slip fully understanding its meaning and legal effect after consultation with Petitioner's attorney); Plea Agreement (demonstrating that Petitioner signed Plea Agreement.)

4

Attorney Spotts then made a statement. (See generally id. 13:6-16:9.) She noted that Petitioner had completed the tenth grade and was well-read and experienced. (Id. at 13:16-17.) She indicated that the Petitioner and the Miranda brothers worked near each other along the same conveyor belt line at the Newgistics facility at different workstations separated from each other by a table. (Id. at 13:11-15.) She said that Petitioner's job involved using a box cutter while the Miranda brothers' job was to use a scanner to scan barcodes on boxes. (Id. at 13:12-13, 15:9-12.) Attorney Spotts stated that there were two verbal confrontations that preceded the assault. (See id. at 13:22-14:1, 14:10-18.) She said that, on the morning of the assault, Petitioner was approached in the Newgistics parking lot and accused of damaging a motorcycle. (See id. at 13:22-14:1.) She stated that Petitioner was accosted a second time at his line and that the second verbal confrontation was interrupted by a supervisor who ordered all participants back to their assigned workstations. (Id. at 14:10-18.) She said that Petitioner felt threatened but nevertheless left his workstation to speak with someone about the motorcycle. (See id. at 14:22-15:3.) She stated that Petitioner then argued with the Miranda brothers and that the assault occurred soon thereafter. (See id. at 14:22-15:24.)

She explained that she had talked with Petitioner about potential defenses, including the "Castle Doctrine" and self-defense, adding that she felt they were not likely to be successful at trial because she said Petitioner had no right to be outside his assigned work area at the time of the assault. (Id. at 16:10-19:18.) She said she and Petitioner "had a lot of talk about [why] the Castle Doctrine would not apply . . . because [Petitioner] was in some else's work station, [and] that he brought a box cutter to a fist

5

fight, if you want to accept that. And again, that's not a definition of self defense." (Id. at 18:2-7.) She also stated that she explained the difference between street reality and law reality telling Petitioner that, had Petitioner felt threatened, he should have told his supervisor and demanded that the police be called. (Id. at 17:3-11.)

Attorney Spotts then expressed her view that the Plea Agreement was a good deal for Petitioner because he would be able to pursue a GED and other educational opportunities at Boot Camp, while a conviction on Count 1-Aggravated Assault (F-1) would disqualify him from these programs. (Id. at 18:12-19:18, 20:2-4.) Following that, I determined that Petitioner's plea was voluntarily, intelligently, and knowingly made, accepted his guilty plea, and imposed sentence in accordance with the Plea Agreement (Id. at 20:17-23; N.T. PCRA Hr'g. at 30:18-31:1.)

On November 13, 2012, while still represented by Attorney Spotts, Petitioner unilaterally submitted a *pro se* "Motion for Withdraw [sic] of Guilty Plea." (Post-Sentence Motion *nunc pro tunc* and Motion to Withdraw as Counsel ¶ 5.) He then submitted another handwritten *pro se* "Motion to Withdraw guilty plea [sic]" on November 17, 2012. On November 26, 2012, Attorney Spotts filed a Post-Sentence Motion *nunc pro tunc* and Motion to Withdraw as Counsel requesting to withdraw Petitioner's guilty plea and requesting to withdraw as Petitioner's counsel. I denied both motions in this Court's November 28, 2012 Order. On December 4, 2012, Petitioner submitted an untitled, *pro se* letter again requesting to withdraw his guilty plea. I denied that request in my December 7, 2012 Order. On December 6, 2012, Petitioner submitted a *pro se* "Motion for extraordinary relief [sic]." On December 10, 2012, Petitioner submitted a *pro se* "Motion for Ineffective Counselin [sic]" followed by a December 18, 2012, *pro se* "Motion

6

for post conviction collateral relier [sic]." He then submitted a *pro se* "Motion for Ineffective Counseln [sic]" on December 28, 2012.

In this Court's January 7, 2013 Order, I deemed Petitioner's December 28, 2012 Motion a "Petition for Post-Conviction Collateral Relief," and appointed Vincent J. Quinn, Esquire to represent Petitioner. On January 8, 2013, Petitioner submitted a *pro se* "Notice for Lawsuite [sic]". On July 26, 2013, Petitioner submitted an "Amended Motion for Post-Conviction Collateral Relief." On July 30, 2013, the Commonwealth submitted its Response. In its response, the Commonwealth agreed that an evidentiary hearing was necessary.

The PCRA hearing was held on December 15, 2014. Three witnesses testified: Patricia K. Spotts, Esquire; Monique Hill, a co-worker, and Petitioner. Vincent J. Quinn, Esquire represented Petitioner at the PCRA hearing while Travis Anderson represented the Commonwealth. (N.T. PCRA Hr'g. at 1.) Attorney Spotts offered credible testimony about her representation that conflicted with Petitioner's testimony, which was not credible. (See generally id. at 4-32 (Attorney Spotts' testimony); Id. at 40-64 (Petitioner's testimony).) After the PCRA Hearing, Petitioner submitted a "Brief *sur* Amended PCRA" on February 27, 2015 and the Commonwealth submitted a "Brief in Opposition to Post-Conviction Relief" on March 27, 2015.

## DISCUSSION

Prior to any testimony at the PCRA hearing, I asked Attorney Quinn to specify the exact grounds for relief. (N.T. PCRA Hr'g. at 3:8-9.) He limited the grounds for relief to the four provided in Paragraph 9(A)-(D) of Petitioner's Amended Motion for Post-

Conviction Collateral Relief.[10] (Id. at 3:14-17.) The four grounds are as follows: (1) Attorney Spotts failed to provide Petitioner with any written discovery materials before Petitioner's guilty plea despite Petitioner's request to review them; (2) Attorney Spotts met Petitioner only four times between Petitioner's arrest and guilty plea; (3) Attorney Spotts refused to interview any potential witnesses in a timely manner; and (4) Attorney Spotts told Petitioner that a Lancaster County jury would not acquit Petitioner because of Petitioner's race, notwithstanding the potential merits of any defense. (Pet. Am. Mot. For Post-Conviction Collateral Relief ¶ 9(A)-(D).)

On grounds (1) and (2), the Commonwealth counters that Attorney Spotts' counsel was not ineffective because she personally reviewed the discovery materials with Petitioner a number of times, regularly corresponded with Petitioner by mail, and had her investigators regularly meet with Petitioner. (Commw.'s Br. at 4-5.) On ground (3), the Commonwealth replies that Attorney Spotts diligently attempted to locate witness Monique Hill and that, even if she had testified, her testimony would not have supported Petitioner's self-defense claim that he was attacked first because Ms. Hill did not see the beginning of the fight.[11] (Id. at 6.) The Commonwealth also argues that Petitioner's guilty plea was his own decision and was thus not involuntary. (Id. at 7-8.)

---

[10] To the extent that paragraphs 8, and 10-12 of Petitioner's Amended Motion for Post-Conviction Relief state alternate grounds for relief, those grounds are waived due to Attorney Quinn's limiting statement at the PCRA hearing.

[11] In a footnote, the Commonwealth argues that Petitioner waived the issue of Attorney Spotts' alleged failure to discuss "trial strategy" with Petitioner because the Commonwealth claims that issue was raised initially in Petitioner's Brief rather than in Petitioner's Amended PCRA Petition. (Commw.'s Br. at 4 n.1.) I find that this issue was not waived by Petitioner for the following reasons. To the extent that Petitioner's Brief discusses trial strategy, it only does so in the context of self-defense and the "Castle Doctrine," which are included in ground (4). (Pet.'s Br. at 5; Pet.'s Am. Mot. For Post-Conviction Collateral Relief, ¶ 9(D). Furthermore, the Commonwealth expressly addresses Attorney Spotts' discussions with Petitioner regarding self-defense and the "Castle Doctrine in its own brief. (Commw.'s Br. at 6-7.) The Commonwealth cannot have it both ways: it cannot claim that the Petitioner waived a certain issue and then address it in its own brief.

The Commonwealth does not specifically address ground (4). I conclude that, not only has Petitioner failed to establish that Attorney Spotts provided ineffective assistance of counsel, he has also failed to show that this purported ineffective assistance resulted in his tendering an unknowing, involuntary, or unintelligent plea. These two intertwined but separate claims will be addressed in turn.

The Post-Conviction Relief Act ("PCRA") provides for an action by which a defendant convicted of a crime they did not commit or serving an illegal sentence may obtain collateral relief. 42 Pa.C.S.A. § 9542. To be eligible for relief under the PCRA, a defendant must plead and prove all four of the elements of the statute by a preponderance of the evidence. Id. § 9543(a). First, the PCRA Petition must be timely. Here, Defendant's PCRA Petition was timely filed.[12] Second, a defendant must have "been convicted of a crime under the laws of this Commonwealth," and must be imprisoned, on probation, or on parole at the time that relief is requested. Id. § 9543(a)(1)(i-iii). Defendant was convicted on November 8, 2012 and was incarcerated at Lancaster County Prison when he filed his *pro se* PCRA Petition and was incarcerated at the Quehanna Boot Camp when the Amended PCRA Petition was filed. Accordingly, this element is established. Third, Defendant must show that the issue has not been previously litigated or waived. Id. § 9543(a)-(b).[13] The issue here has not been

---

[12] Judgment of sentence was entered on November 8, 2012. A PCRA Petition must be filed within one year of the date the judgment becomes final. 42 Pa.C.S.A. § 9545(b)(1). Judgment becomes final at the conclusion of direct review, or at the expiration of time for seeking the review. Id. §9545(b)(3). The time for direct appeal concluded on or about December 8, 2012. See Pa.R.A.P. 903 ("the notice of appeal . . . shall be filed within 30 days after the entry of the order from which the appeal is taken.) Thus, to be timely, Petitioner's PCRA Petition must have been filed on or about December 8, 2013. Here, Petitioner filed his *pro se* PCRA Petition on January 7, 2013 and his Amended PCRA Petition on July 24, 2013, well within the one-year filing period. Thus, the PCRA Petition was timely.

[13] "An issue has been previously litigated when the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue or the issue has been raised and decided in a proceeding collaterally attacking the conviction or sentence." 42 Pa.C.S.A. § 9544(a) (internal punctuation omitted). An issue is waived "if the petitioner could have raised it but failed to do so

9

reviewed by the highest potential appellate court, has not been previously raised or decided in a prior collateral proceeding, and could not have been raised previously by Petitioner. Thus, this element is established.

Finally, a defendant must prove that his sentence or conviction was the result of one or more errors enumerated in the statute. Id. § 9543(a)(2). Petitioner claims that his guilty plea counsel's ineffective assistance induced him to enter an involuntary plea. Such a claim is cognizable under the PCRA. Commonwealth v. Barndt, 74 A.3d 185, 191 (Pa. Super. Ct. 2013) (citation omitted). It will provide a basis for relief only:

> if the ineffectiveness caused an involuntary or unknowing plea. This is similar to the 'manifest injustice' standard applicable to all post-sentence attempts to withdraw a guilty plea. The law does not require that the appellant be pleased with the outcome of his decision to enter a plea of guilty. All that must be shown is that the appellant's decision to plead guilty be knowing, voluntary and intelligently made.

Commonwealth v. Diaz, 913 A.2d 871, 872 (Pa. Super. Ct. 2006) (citing Commonwealth v. Lewis, 708 A.2d 497, 500-01 (Pa. Super. Ct. 1998)). "[A] manifest injustice occurs when a plea is not tendered knowingly, intelligently, voluntarily, and understandingly." Commonwealth v. Prendes, 97 A.3d 337, 352 (Pa. Super. Ct. 2014) (citation omitted). To determine the voluntariness of a guilty plea, the Pennsylvania Rules of Criminal Procedure "require the court to conduct an on-the-record colloquy to ascertain whether a defendant is aware of his rights and the consequences of his plea." Id. (citing Commonwealth v. Hodges, 789 A.2d 764, 765 (Pa. Super. Ct. 2002)); see Pa.R.Crim.P. 590.

---

before trial, at trial, during unitary review, on appeal or in a prior state post-conviction proceeding." Id. § 9544(b).

10

In an ineffectiveness claim, a court presumes that defense counsel provided effective assistance. Commonwealth v. Rollins, 738 A.2d 435, 441 (Pa. 1999); *accord* Strickland v. Washington, 466 U.S. 668, 689 (1984), Commonwealth v. Reyes-Rodriguez, 111 A.3d 775, 779-80 (Pa. Super. Ct. 2015). To overcome the presumption, a defendant must demonstrate by a preponderance of the evidence that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for the action or inaction; and (3) Defendant has been prejudiced by the ineffectiveness of counsel. Reyes-Rodriguez, 111 A.3d 775 at 780. A defendant's claim of ineffectiveness fails if he is unable to prove one or more of the three prongs. Commonwealth v. Reyes, 870 A.2d 888, 896-97 (Pa. 2005); *accord* Commonwealth v. Fears, 86 A.3d 795, 804 (Pa. 2014). Regarding prong (1), "counsel cannot be deemed ineffective for failing to raise a meritless claim." Commonwealth v. Rivera, 108 A.3d 779, 789 (Pa. 2014) (citation omitted). Regarding prong (2), counsel will not be deemed ineffective if any reasonable basis exists for his actions. Commonwealth v. Diehl, 61 A.3d 265, 268 (Pa. Super. Ct. 2013) (citing Commonwealth v. Carter, 656 A.2d 463, 465 (Pa. 1995)). Regarding prong (3), "to establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Commonwealth v. Barndt, 74 A.3d 185, 191 (Pa. Super. Ct. 2013) (internal quotation marks and citation omitted).

**Grounds (1)-(2): Discovery Materials and Alleged Failure to Meet**

Because grounds (1) and (2) of Petitioner's Motion are so closely related, I shall evaluate them together. At the PCRA hearing, Attorney Spotts testified about why she did not give Petitioner the discovery packet. She explained that she did not give

11

Petitioner the discovery packet because her office has a policy of not providing discovery materials to an incarcerated defendant due to concerns that another inmate might review the materials and be a witness against that defendant. (See N.T. PCRA Hr'g. at 5:9-19). Attorney Spotts added that she nevertheless personally reviewed discovery materials with Petitioner on "numerous occasions," that they read the discovery materials with each other, that she communicated regularly with Petitioner by mail, and that investigators from her office also met with Petitioner. (Id. at 5:9-23, 8:7-10, 15:3-6, 16:20-23; 17:6-7 (describing meeting with petitioner); id. at 8:9-10, 15:23-16:7 (describing mail correspondence.).) She asserted that Petitioner was familiar with the information contained in the discovery packet because he was present at the preliminary hearing and observed Attorney Spotts cross-examine the police, a representative of Newgistics, and the Miranda brothers. (Id. at 17:17-22.) Finally, she claimed that Petitioner was so familiar with the discovery materials that he "knew [them] by heart," basing her observation on Petitioner's writing her with questions about the discovery materials even though Petitioner did not have the physical discovery packet. (Id. at 17:8-16.) Attorney Spotts also testified about why she did not obtain a copy of the video of the incident. She said that her office attempted to procure a video of the incident from Petitioner's employer due to Petitioner's strong feeling that it would help his case. (Id. at 17:23-18:15.) She added that both the Commonwealth and Attorney Spotts requested the video, but Petitioner's employer never gave a copy to either attorney or the police. (Id. at 18:12-19:13.) Finally, Attorney Spotts claimed that a police officer told her that Petitioner's employer told him that the video did not show the actual

12

altercation, but only showed Defendant's workstation in the moments leading up to the incident. (Id. at 19:5:13.)

In contrast, Petitioner claimed that Attorney Spotts had discussed the discovery packet with him only for about forty-five minutes a few days before he entered his guilty plea. (Id. at 41:8-24.) Petitioner quickly backtracked, testifying that he met with Attorney Spotts about five times in the week before his guilty plea and that none of these meetings exceeded forty-five minutes. (Id. at 42:2-10.) He also testified that his letters were not answered until a week before his guilty plea. (Id. at 42:2-12.) The Court asked Petitioner about the video of the incident Petitioner claimed to have. (Id. at 64:6-10.) Petitioner testified that he had forwarded the video to Attorney Quinn, and that a video of the incident was on YouTube. (Id. at 64:10-17.) Attorney Quinn stated that he never received a video from Petitioner but obtained a video from Monique Hill's cell phone, adding that the video was useless because it only showed a "general melee." (Id. at 64:18-23.)

On grounds (1)-(2) of Petitioner's claim, I agree with the Commonwealth that Attorney Spotts' number of meetings with Petitioner, not giving Petitioner a physical copy of the discovery packet, and not procuring the video of the fight did not constitute ineffective assistance that would render Petitioner's guilty plea involuntary for the following reasons.

Concerning the number of meetings, I find Petitioner's claim in his Amended Motion that Attorney Spotts only met with him four times between his arrest and guilty plea devoid of credibility. Attorney Spotts gave credible testimony that she met with petitioner on numerous occasions at Lancaster County Prison, maintained written

13

correspondence with Petitioner, and had investigators meet with him. Attorney Spotts had a reasonable basis for not going to Lancaster County Prison as frequently as Petitioner would like because she had to represent other clients, sent investigators from her office to visit Petitioner and help answer his questions, and regularly answered Petitioner's questions by mail.

Petitioner's claim also fails because he suffered no prejudice based on the number of meetings with Attorney Spotts. To establish prejudice, Petitioner must show that there was "beneficial information or issues" that Attorney Spotts failed to consider and that, had Petitioner and Attorney Spotts discussed this information, Petitioner would have gone to trial rather than pleaded guilty. See Commonwealth v. Elliott, 622 Pa. 236, 263-64 (2013) cert. denied sub nom. Elliott v. Pennsylvania, 135 S.Ct. 50 (2014) (describing prejudice standard in preparation for trial). Petitioner here has not shown that Attorney Spotts failed to discover any new information that she would have learned "had [s]he engaged in a more thorough pretrial consultation" with Petitioner that would, in turn, have convinced Petitioner to go to trial rather than to plead guilty. Elliott, 622 Pa. 236 at 263-64. Indeed, Petitioner's own testimony reveals that Attorney Spotts was well-aware of Petitioner's concerns. Petitioner testified that "[e]very idea I came up with, she shot them [sic] down[,]" indicating that Petitioner and Attorney Spotts had extensive discussions about the potential defenses Petitioner wanted to use, witnesses Petitioner wanted to call, and evidence such as the video that Petitioner considered vital to his case. (N.T. PCRA Hr'g. at 42:14-18.) Thus, Petitioner has failed to show that there was beneficial information or issues that Attorney Spotts failed to consider and that the voluntariness of Petitioner's plea would have been affected as a result.

14

Regarding the discovery packet, Petitioner's claim fails because Attorney Spotts had a reasonable basis based on protecting her client's interests for not handing Petitioner a physical copy of the discovery packet and because Petitioner suffered no prejudice as a result of that failure. Attorney Spotts testified that she did not give Petitioner a copy of the discovery packet because it was her employer's policy not to give incarcerated defendants their discovery packets due to concerns that that another inmate might read the packet and testify against the defendant. See Commonwealth v. Lowery, 9 Pa.D.&C. 5th 449, 458-59, 2009 WL 5909151 (Pa.Com.Pl., Crawford Co., 2009) (holding that trial counsel's not providing defendant with copy of entire discovery packet in accordance with that attorney's general practice and based on a strategy of protecting client interests that resulted in a favorable negotiated plea agreement was not ineffective assistance). Thus, Petitioner's first claim fails because Attorney Spotts had a reasonable basis for withholding the discovery packet from Petitioner.

Even if Attorney Spotts did not have a reasonable basis for withholding the discovery packet, Petitioner's first claim also fails because he has failed to show that he suffered prejudice as a result of this failure. To demonstrate prejudice, Petitioner must show that, had Attorney Spotts given him a physical copy of the discovery packet, there is a reasonable probability that he would have insisted on going to trial instead of pleading guilty. Commonwealth v. Barndt, 74 A.3d 185, 191 (Pa. Super. Ct. 2013). Petitioner has failed to establish a reasonable probability that he would have chosen to go to trial rather than plead guilty if he had possessed a physical copy of the discovery packet because the record reflects that Petitioner was familiar with the information in the discovery packet at least a week before pleading guilty and chose to plead guilty

15

anyway. Reading the same information alone in his cell in addition to reviewing it with Attorney Spotts would not have provided Petitioner with any new information affecting his decision to plead guilty. Attorney Spotts provided credible testimony that she personally reviewed the discovery materials with Petitioner on "numerous occasions" at Lancaster County Prison, read through the materials with him, and communicated with him regularly by mail. This testimony belies Petitioner's claim that Attorney Spotts only discussed the discovery packet with him once for forty-five minutes a few days before his guilty plea. Also, Petitioner was able to observe Attorney Spotts' cross-examination of the Miranda Brothers and a representative of his former employer at the Preliminary hearing. Finally, Attorney Spotts provided credible testimony that Petitioner was so familiar with the discovery materials that he knew them by heart, even without having the discovery packet with him.

Concerning the video, Petitioner's claim fails because Attorney Spotts had two reasonable bases for not obtaining the video. First, Newgistics refused to supply it to either her or the Commonwealth. Second, Attorney Spotts provided credible testimony that the video would not have been helpful to Petitioner's defense because a police officer told her that the video did not show the assault or the events outside of Petitioner's workstation preceding it. Her testimony was corroborated by Petitioner's own PCRA counsel who told the Court that a witness video of the incident was "useless" because it did not show the initial aggressor and whether Petitioner was defending himself when using the box cutter and whether he met his duty to retreat. Therefore, Petitioner's first and second claims fail.

16

## Ground 3: Alleged Refusal to Interview Witnesses

At the PCRA hearing, Attorney Spotts testified that she found it difficult to locate potential witnesses because Petitioner only knew the first names or nicknames of many of his co-workers, but that she tried to use this information to find them. (N.T. PCRA Hr'g. at 7:3-13 (describing attempted identification of witnesses by first names); id. at 19:17-20:3 (describing attempted identification of witnesses by nicknames).) She stated that she asked Newgistics to supply a list identifying all the employees who worked on the morning of June 24, 2011, but Petitioner's employer was "completely uncooperative" and did not supply that information. (Id. at 7:8 (describing Petitioner's employer as unhelpful in locating witnesses); 20:1-3 (describing requesting list of co-workers from employer).) Attorney Spotts asserted that she made special efforts to contact the only witness she felt would have been helpful to Petitioner's case, even working with the assistant district attorney to obtain his identity. (Id. at 22:7-23:4.) Attorney Spotts claimed that Petitioner's employer stonewalled her efforts by providing her with a first and last name for that individual but eventually informing her that Petitioner's co-worker was no longer employed at Newgistics and that they had no contact information for him. (Id. at 22:20-23:4.) She added that her office attempted to reach Monique Hill by leaving a contact letter at 173 South Fifth Street in Columbia, Pennsylvania, but never received a response. (Id. at 7:10-8:3.) Attorney Spotts testified that she could not explain why her investigator's report was dated one day before Petitioner's guilty plea, but stated that the investigator had been working on it for several months and had been contacting potential witnesses during that time. (Id. at 6:20-23.)

In contrast, Petitioner claimed that he supplied Attorney Spotts with the first and last names of two potential witnesses, but that neither spoke with her. (Id. at 43:4-9.) He added that he had hoped that Attorney Spotts would have contacted the temp agency that hired many Newgistics employees to get more information to identify potential witnesses, which he did not think would be very difficult. (Id. at 49:4-51:16.)

At the PCRA hearing, one such witness, Monique Hill, testified that she was a co-worker of Petitioner and was in the same general area of the confrontation when it occurred. She testified that she did not see where the fight started, but only where it finished, never received any correspondence from Attorney Spotts, and that she never reached out to Attorney Spotts to testify on Petitioner's behalf because they were not "best friends or anything like that." (Id. at 35:3-38:21.)

On ground (3) of Petitioner's claim, I agree with the Commonwealth that Attorney Spotts' efforts to contact witnesses, specifically Monique Hill, did not constitute ineffective assistance that would render Petitioner's guilty plea involuntary for the reasons that follow. Under the PCRA, two prerequisites, one procedural, one substantive, must be met to gain relief for an ineffectiveness claim based on a failure to have a witness testify. Commonwealth v. Reid, 99 A.3d 427, 438 (Pa. 2014). The procedural prerequisite is met in the instant case for Monique Hill but not for any other potential witness.[14] A key element to a missing witness claim is that the absence of the testimony of that witness prejudiced Petitioner and denied him a fair trial. Reid, 99 A.3d

---

[14] "The PCRA requires that, to be entitled to an evidentiary hearing, a petitioner must include in his PCRA petition 'a signed certification as to each intended witness stating the witness's name, address, date of birth and substance of testimony.'" Commonwealth v. Reid, 99 A.3d 427, 438 (Pa. 2014) (quoting 42 Pa.C.S.A. § 9545(d)(1); Pa.R.Crim.P. 902(A)(15)). Petitioner only included such a certification for Monique Hill.

427 at 438 (citation omitted). In this case, Petitioner has not met that burden because Monique Hill testified that she only saw how the fight ended, not how it started. She could not have testified to whether Petitioner met his duty to retreat or was defending himself. Thus, her testimony would have been useless to any defense based on self-defense or the "Castle Doctrine." Therefore, the absence of her testimony did not prejudice Petitioner and his third ground for ineffective assistance of counsel fails.

### Ground 4: Alleged Comments about Race and Merits of Defenses

At the PCRA hearing, Attorney Spotts testified that she discussed the jury selection process with Petitioner, that he never mentioned race as an issue during that process but did feel that he was charged because he was African-American. (N.T. PCRA Hr'g. at 10:14-11:13 (describing jury selection and Petitioner's race); id. at 13:4 (describing race of witnesses.) She added that she never told Petitioner that he would not prevail at trial due to his race. (Id. at 28:19-29:6.) She also testified that her concern with arguing self-defense and the "Castle Doctrine" at trial was that the Commonwealth could successfully argue that Petitioner had violated his duty to retreat by entering another's workspace before the altercation. (Id. at 9:7-10:6.) She asserted that she was concerned that a jury would not find Petitioner's account of the incident credible because the Commonwealth's witnesses would have supported the complaining witnesses' view that Petitioner was the aggressor and was not touched before he used the box cutter. (Id. at 24:23-27:5.)

On the other hand, Petitioner testified that Attorney Spotts told him that he, as an African-American male, would be judged by an all-white jury who would view him with disfavor but that she never told him he would not get a fair trial. (Id. at 47:3-9.) He

added that he wanted to go to trial but that he pled after speaking with his mother. (Id. at 47:13-18.) Petitioner then recounted the incident, testifying that six co-workers confronted him, that he was so nervous he went into the bathroom until told by a boss that he needed to return to work, and that he left his workstation to speak with a co-worker about the damaged motorcycle. (Id. at 43:10-46:8.) He conceded that the box cutter was in his pocket when he left his workstation. (Id. at 52:20-54:6.) He claimed that he was not the first aggressor and did not pull the box cutter out of his pocket until after he had been punched in the face and felt in imminent danger, and that a video would confirm his account. (Id. at 45:22-46:8). He further testified that he had discussed self-defense and the "Castle Doctrine" with Attorney Spotts, that she told him they would not be effective, and claimed that Attorney Spotts did not understand the "Castle Doctrine." (Id. at 42:12-24.)

On ground (4), first, I find Attorney Spotts' testimony that she never made these alleged statements in the first place to be credible. Second, even if Attorney Spotts had made these statements, Petitioner has still failed to establish that her making this statement constitutes ineffective assistance of counsel because he has failed to show that Attorney Spotts had no reasonable basis for not asserting the defenses of self-defense and the "Castle Doctrine." It is the defendant's burden to prove that "the failure to litigate the issue prior to or during trial, during unitary review or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel." 42 Pa. C.S.A. § 9543(a)(4); Commonwealth v. Diehl, 61 A.3d 265, 268 (Pa. Super. Ct. 2013). Successfully asserting a justification defense such as the "Castle Doctrine" or self-defense at trial would have required some evidence to show that Petitioner did not

20

violate his duty to retreat or avoid the danger. See Commonwealth v. Rivera, 108 A.3d 779, 791 (Pa. 2014) (describing requirements for justification defenses). Here, Attorney Spotts provided credible testimony that she thought that, at trial, the Commonwealth would be able to show that Petitioner violated his duty to retreat because he walked over to his co-worker's workstation with the box cutter immediately before the assault and because she provided credible testimony that she could not produce witnesses to testify that Petitioner was attacked first. Thus, she was concerned that, at trial, the Commonwealth would be able to "satisf[y] its burden of disproving self-defense" or the "Castle Doctrine." Rivera, 108 A.3d 779 at 791. Therefore, her decision not to pursue justification defenses such as the "Castle Doctrine" or self-defense did not amount to ineffective assistance because it could have resulted from a "rational, strategic or tactical decision." See Diehl, 61 A.3d 265 at 268.

Third, Attorney Spotts did not render ineffective assistance by failing to argue a justification defense such as the "Castle Doctrine" or self-defense because Petitioner's own account of the confrontation and altercation at the PCRA hearing indicates that these defenses were baseless. See Commonwealth v. Parker, 564 A.2d 246, 250 (Pa. Super. Ct. 1989); accord Rivera, 108 A.3d 779 at 789 (citation omitted). Petitioner recounted that he was frightened and entered the bathroom as a result of his anxiety. However, he testified that, rather than tell his supervisor that he felt threatened and demand that the police be called, he voluntarily left his workstation while carrying a box cutter to talk with one of the complaining witnesses. It defies belief that, moments before walking away from his workstation to speak with a co-worker about the damaged motorcycle, he felt so terrified that he had to hide from those same co-workers in the

21

bathroom. Moreover, Petitioner's own testimony shows that he voluntarily left his workstation before the confrontation, violating his duty to retreat or avoid the danger. See Rivera, 108 A.3d 779 at 793 (holding that Petitioner failed to satisfy requirements of self-defense when he admitted that he could have retreated safely). Thus, Attorney Spotts did not render ineffective assistance by failing to zealously assert a meritless claim.

### Voluntariness of Petitioner's Guilty Plea

At the PCRA hearing, Attorney Spotts testified that she never pressured Petitioner to accept the deal before completing the written guilty plea colloquy, post-sentence rights form, written plea agreement, and guilty plea slip together. (N.T. PCRA Hr'g. at 28:4-15, 29:7-31:18.) Attorney Spotts also testified that she felt that the negotiated plea agreement was a good offer by the Commonwealth because even a guideline sentence would have resulted in significant jail time for Petitioner and that Petitioner was aware of the deal the week before the scheduled trial date. (Id. at 13:11-14:7.)

Petitioner admitted signing these same documents understanding their meaning and legal effect. (Id. at 60:3-10.) However, he claimed that his real reason for signing them was his desire to end his period of incarceration. (See id. at 55:18-62:14). He added that his statements at his Guilty Plea/Sentencing hearing that his decision to plead guilty was his own and that his written, signed assertions on the guilty plea slip, guilty plea colloquy, and written plea agreement were all untrue. (Id. at 60:3-10.) Finally, Petitioner admitted stating at his Guilty Plea/Sentencing hearing that he was satisfied

22

with the services of Attorney Spotts but claimed at the PCRA hearing that this was a lie. (Id. at 62:23-63:3.)

I find now, as I did at that time, that Petitioner entered a knowing, voluntary, and intelligent guilty plea as demonstrated by the extensive on-the-record colloquy. During this colloquy, Petitioner acknowledged that he understood the charges against him, listened to Assistant District Attorney Todd Brown describe the factual basis for the charges, stated that he understood that he was forfeiting his right to trial by jury, understood that he was presumed innocent and that the Commonwealth had the burden of proving his guilt beyond a reasonable doubt, that he understood the permissible ranges of sentences and fines, and that I was not bound by the terms of the negotiated plea agreement unless I accepted the plea. See Commonwealth v. Prendes, 97 A.3d 337, 352 (Pa. Super. Ct. 2014) (stating requirements for adequate guilty-plea colloquy).

Furthermore, it is settled law that "one is bound by one's statements made during a plea colloquy, and may not successfully assert claims that contradict such statements. Commonwealth v. Muhammad, 794 A.2d 378, 384 (Pa. Super. Ct. 2002) (citation omitted); accord Commonwealth v. Capelli, 489 A.2d 813, 819 (Pa. Super. Ct. 1985). In other words, a "defendant may not knowingly lie to the court while under oath" while entering a guilty plea. Commonwealth v. Pollard, 832 A.2d. 517, 524 (Pa. Super. Ct. 2003). Statements that may not be later contradicted include assertions that one is satisfied with the services of one's attorney and that one's plea has been voluntarily entered. See Stork, 737 A.2d 789 at 791. Mere "disappointment by a defendant in the sentence actually imposed does not represent manifest injustice" warranting the relief of withdrawal of a guilty plea. Muhammad, 794 A.2d at 384 (quoting Commonwealth v.

23

Munson, 615 A.2d 343 (Pa. Super. Ct. 1992)). In other words, Pennsylvania "does not require that a defendant be totally pleased with the outcome of his decision to plead guilty, only that his decision be voluntary, knowing, and intelligent." Pollard, 832 A.2d 517 at 524. Finally, "the desire of an accused to benefit from a plea bargain is a strong indicator of the voluntariness of the plea." Id.

Here, during his guilty plea colloquy, Petitioner signed the guilty plea colloquy, guilty plea slip, and plea agreement form, told me that his decision to plead guilty was voluntary and was his own decision, that he fully understood what he was doing and the rights he was forfeiting, and that he was fully satisfied with the services of Attorney Spotts. However, during his PCRA hearing, he contradicted these statements by saying that they were all untrue. Petitioner cannot claim at his PCRA hearing that he was lying during his Guilty Plea/Sentencing hearing about the voluntariness of his guilty plea. While Petitioner may not be happy with the outcome of his guilty plea and might now regret his decision, he is bound by the statements that he made during the guilty plea colloquy. Petitioner was of sufficient age and intelligence to understand what he was doing when he pled guilty and cannot, in hindsight, assert that his guilty plea was not voluntary or that he was not satisfied with Attorney Spotts' representation. Finally, Petitioner's demonstrating a desire to benefit from the negotiated plea agreement is a strong indicator of the voluntariness of the guilty plea. Under the plea agreement, Petitioner's aggravated assault charge with a deadly weapon enhancement was *nolle prossed*, making Petitioner eligible for Boot Camp, with its attendant educational and vocational opportunities. It is unconscionable that he could accept these very real

24

benefits of the bargain while simultaneously avoiding its burdens. Thus, Petitioner's guilty plea was not involuntary.

## CONCLUSION

For the reasons set forth above, I conclude Attorney Spotts did not provide Petitioner ineffective assistance of counsel and that Petitioner's guilty plea was not involuntary.

Accordingly, I enter the following:

# IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA

## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA      :
                                  :
            v.                    :        No. 3030-2011
                                  :
SHAWN D. HANSLEY                  :

## ORDER

BY: WRIGHT, J.                                    June 4, 2015

AND NOW, this 4th day of June, 2015, upon consideration of Petitioner's *pro se* filings, deemed to be a Petition for Post-Collateral Relief, Amended Motion for Post-Collateral Relief, Supporting Brief, Commonwealth's Brief in Opposition, and hearings thereon:

IT IS HEREBY ORDERED that said Petition is DENIED for the reasons set forth in the preceding opinion.

I certify this document to be filed
in the Lancaster County Office of
the Clerk of the Courts.

Joshua G. Parsons
Clerk of the Courts

BY THE COURT:

JEFFERY D. WRIGHT
JUDGE

LANCASTER COUNTY, PA
2015 JUN -4 PM 2:20
CLERK OF COURTS

Copies to:
Travis S. Anderson, Assistant District Attorney
Patricia K. Spotts, Assistant Public Defender
Vincent J. Quinn, 1347 Fruitville Pike, Lancaster, PA 17601